**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JOHN DOE, | * | |
| Plaintiff, | * | |
| v. | * | Case No. 8:16-cv-03314-PX |
| WALLACE LOH, *et al.*, | * | |
| Defendants. | * | |

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT
<u>OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT</u>**

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland

<u>/s/ *Christopher B. Lord*</u>
Christopher B. Lord (Bar No. 26117)
Erik James Delfosse (Bar No. 18881)
C. Alexander Hortis (Bar No. 28522)
Catherine A. Bledsoe (Bar No. 11376)
Assistant Attorneys General
200 St. Paul Place, 17th Floor
Baltimore, Maryland 21202-2021
Phone: (410) 576-6450
Fax: (410) 576-6437
clord@oag.state.md.us
edelfosse@oag.state.md.us
ahortis@oag.state.md.us
<u>cbledsoe@oag.state.md.us</u>

Attorneys for Defendants

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................1

I.      The Court Should Consider Exhibit 2 To Defendants' Motion. ........................................ 3

II.     Plaintiff Has Failed To State A Claim For Violation Of Procedural Due Process In
        A School Disciplinary Proceeding. ........................................................................................ 4

        A.  The Fourth Circuit and District of Maryland have rejected any right to cross-
            examination in university expulsion proceedings. ................................................... 4

        B.  Plaintiff received oral and written notice that was more than sufficient for
            school disciplinary proceedings. ............................................................................. 6

        C.  Plaintiff's conclusory and unsupported assertions of bias do *not* overcome the
            presumption Mr. Bronson was unbiased or plausibly show actual bias. ............... 9

        D.  Dr. Goodwin's Mistake in Providing the Outdated Policy Does *Not* Rise to a
            Due Process Violation. .......................................................................................... 11

        E.  The SRC Hearing Provided Plaintiff Abundant Opportunity to Be Heard. ............... 13

III.    Plaintiff Has Failed To State A Claim For Violation Of His Equal Protection
        Rights. ....................................................................................................................................... 14

IV.     The Individual Defendants Are Entitled To Qualified Immunity. ..................................... 16

V.      Plaintiff Has Failed To State A Claim Against The University Under Title IX. ............... 16

        A.  Plaintiff has Failed to Allege Particular Facts Sufficient to Cast Doubt on the
            Accuracy of the Outcome of His Disciplinary Proceeding. ................................... 16

        B.  Plaintiff has Failed to Allege Particular Circumstances Suggesting that
            Gender Bias was a Motivating Factor in Finding Him Responsible. .................... 18

VI.     Plaintiff's Negligence Claim Is Barred By The Eleventh Amendment. ........................... 19

CONCLUSION ...................................................................................................................21

i

## INTRODUCTION

Plaintiff (or "Doe") insists that he is the victim of system-wide gender bias, and he blames the Office of Civil Rights of the Department of Education ("OCR"), the University of Maryland, College Park (the "University"), and President Loh and other top administrators at the University for his expulsion from the University based on sexual misconduct.  For the reasons stated in Defendants' Motion to Dismiss and herein, Plaintiff's arguments fail both as a matter of law and, most importantly, because of his own admission that he initiated sexual contact with Jane Roe when she was asleep and thought he was someone else, thus failing to obtain her knowing consent.

### *Plaintiff Admitted He Did Not Obtain Consent from Roe.*

No amount of railing against the system can change one irrefutable fact:  by his own admission, in the early hours of December 14, 2014, Plaintiff climbed into K.P.'s bed with Jane Roe, who was asleep, taking the spot previously occupied by K.P., and initiated sexual contact with her when, he admits, she did not know she was with Doe.  His argument boils down to his contention that he should not be punished because he did not know that she did not know she was with Doe and not K.P.  Similarly, Plaintiff appears to believe that Jane Roe's handwritten statement to the police (Opp. Ex. 1), in which she consented to sexual activity with a person she believed to be K.P., somehow exonerates him.  Opposition ("Opp.") at 2.  Just as in the underlying hearing, however, Doe still fails to acknowledge that this is not a valid excuse; even accepting everything he alleges as true and disregarding the other evidence the SRC considered, the uncontested fact is that he failed to obtain knowing, affirmative consent from Roe to have sexual contact with ***him.***
The University's Sexual Misconduct Policy (the "Policy") provides in pertinent part:

> "Consent" means a ***knowing,*** voluntary and ***affirmatively communicated*** willingness to participate in a particular sexual activity or behavior.…  It is the responsibility of the person who wants to engage in sexual activity to ensure that he/she has consent from the other party, and that the ***other party***

> *is capable of providing consent*…. It is a violation of this policy to engage in sexual activity with someone you know, or should know, is incapacitated. . . . *Incapacitation may result from: sleep*. . . ."

Compl. Ex. 9 at VI-1.60(A)-3 (emphasis added). It is axiomatic that there cannot be effective consent under this definition when one partner, who was asleep, reasonably thinks her partner is someone else. In other words, the fact that Jane Roe may have "consented" to sexual activity with K.P. does not alter the fact that she did not consent to sexual activity *with Plaintiff.*

Based on this, the SRC expressly concluded that the sexual acts between Plaintiff and Jane Roe were not consensual precisely because Roe did not know "who" they were with:

> While masquerading as [K.P.], [Plaintiff] made no reasonable attempt to identify himself to [Jane Roe] who had no reason to believe the person who began touching her was not the person she went to bed with. . . . All sexual acts that occurred between [Plaintiff] and [Jane Roe] were without [Jane Roe's] consent in the view of the SRC as she was unaware that it was [Plaintiff] she was performing these acts with an d not [K.P.] . . . .

Comp. Ex. 12. Because this conclusion is based directly on Doe's own admissions and constitutes a straightforward application of the Policy's definition of "consent," the University's expulsion of Doe was proper and should be affirmed.

### The Other Evidence the SRC Considered Confirms that Doe Violated the Policy.

In addition to Plaintiff's admissions, the SRC properly considered the contemporaneous oral and written statements of Plaintiff's friends. Both A.S. and K.P. gave remarkably similar statements immediately after the incident, in which they both described a "dare" pursuant to which Doe would get into bed with Roe, cuddle with her, and see if she noticed it was not K.P. *See generally* Amended Complaint ("AC") ¶10; Comp. Ex. 1, p. 7-9 of 21.[1] Similarly, K.P. admitted in a text message to Roe, the morning after the incident, that "[Doe] was like let's see if she realizes

---

[1] Moreover, they all stated that when Doe came out of the room, he admitted that Roe did not know she was with Doe, and not K.P. *Id.* These statements confirm Doe's admissions that he had not obtained knowing, affirmative consent with Roe before engaging in sexual activity with her.

if its [sic] not you 'if I go inside and cuddle' … I'm sorry.  I thought he was just cuddling as a joke." Comp. Ex. 4, at pp. 9-10.  In order to defeat the implications of these statements, Plaintiff obtained affidavits from A.S. and K.P. to use at the SRC hearing, in which A.S. and K.P. stated, under oath, that Plaintiff "had no knowledge of any dare when he went to sleep in K.P.'s room." Compl. Ex. 11.

Thus, the SRC had before it the original police statements, K.P. and Roe's text exchange, the affidavits presented by Doe, and Doe's live testimony, all of which it considered.  *See* Comp. Ex. 12, SRC Decision at 3 (noting that SRC considered the affidavits).  With that evidence, it had sufficient evidence to reasonably conclude that Doe was motivated in part by a "dare" and therefore acted intentionally, supporting the ultimate conclusion that Doe violated the Policy when he did not obtain consent from Roe.  *Id.* at 4.

## I.   THE COURT SHOULD CONSIDER EXHIBIT 2 TO DEFENDANTS' MOTION.

(1)   As a preliminary matter, Plaintiff urges this Court not to consider Exhibit 2 to Defendants' Motion, which consists of a declaration by Josh Bronson, the Special Investigator, attaching copies of the emails he sent to A.S., M.T., and K.P. on February 16, 2015, and March 2, 2015.  Opp. at 7-8.  These documents directly refute Plaintiff's contention that Mr. Bronson failed to reach out to the three witnesses during his investigation.  Given that the declaration and emails are part of Plaintiff's claim that (a) his due process rights were violated[2] and (b) Mr. Bronson acted with malice and gross negligence so as to vitiate his immunity, and given that the documents are authentic, the Court should consider them, especially in the context of the qualified immunity and state immunity analysis.

---

[2] In fact, even if the Court does not consider Mr. Bronson's emails, the result in this case remains the same, based on Doe's own admissions discussed above and the process he did receive before the SRC met to hear his case.

## II.   PLAINTIFF HAS FAILED TO STATE A CLAIM FOR VIOLATION OF PROCEDURAL DUE PROCESS IN A SCHOOL DISCIPLINARY PROCEEDING.

Plaintiff argues that his expulsion should be overturned as a result of various due process[3] "violations:" (1) no opportunity to cross-examine Jane Roe (Opp. at 11); (2) failure to follow the University's Policy in connection with the original notice of charges (*id.* at 14); (3) "bias" by Mr. Bronson (*id.* at 15); (4) providing him with outdated policies (*id.*at 17); and (5) the SRC hearing was somehow insufficient.  *Id.* at 19.  None state a meritorious due process claim.  While Plaintiff relies on generalities from Supreme Court cases on terminating monetary payments to welfare beneficiaries, *Goldberg v Kelly*, 397 U.S. 254 (1970), and Social Security disability benefits.  *Matthews v. Eldridge*, 424 U.S. 319 (1976), he ignores the holdings in factually similar cases, in which the vast majority of courts have rejected claims virtually identical to Doe's.

### A.   The Fourth Circuit and District of Maryland have rejected any right to cross-examination in university expulsion proceedings.

Plaintiff misleadingly suggests that numerous courts have required trial-level cross-examination of a fellow student in sexual misconduct cases.  To the contrary, courts have overwhelmingly held that "requir[ing] cross-examination… would unnecessarily formalize school expulsion proceedings, imposing the additional burden on school administrators of applying, to some extent, the rules of evidence."  *Newsome v. Batavia Local Dist.*, 842 F.2d 920, 925 n.4 (6th Cir. 1988).  Most importantly, the Fourth Circuit itself has stated it has found "no basis in the law" for importing a "trial-like proceeding, with the attendant right to call and cross-examine witnesses" in a university expulsion proceeding.  *Butler v. Rector & Bd. Of Visitors of the College of William & Mary*, 121 Fed. Appx. 515, 520 (4th Cir. 2005) (affirming denial of due process claims brought by

---

[3] For the reasons stated in Defendants' Motion to Dismiss, Plaintiff's State constitution claims (*i.e.* due process and equal protection) fail on the merits for the same reasons as the Federal constitutional claims and Defendants' arguments as to those claims are incorporated into the arguments on the federal claims.

student expelled for deceitful misconduct with counseling clients) (cited in *R.M.B. v. Bedford Cnty (Va.) School Bd.*, 169 F. Supp. 3d 647, 658 n.5 (W.D. Va. Mar. 11, 2016) (rejecting procedural due process claims where student could not call witnesses).   As Judge Chasanow recently reaffirmed, in the "disciplinary context, the right to confront witnesses, and the ***right to cross-examine witnesses generally have not been deemed necessary elements of due process of law***." *Osei v. Univ. of Md., Univ. College*, 202 F. Supp. 3d 471, 485 (D. Md. 2016) (emphasis added).[4]

Moreover, Plaintiff was allowed a modified form of cross-examination in which he submitted a series of questions to the investigator witness through the SRC chair.   Courts have upheld this procedure for school disciplinary hearings.  *See, e.g., Doe v. Cummins*, 662 F. App'x 437, 448 (6th Cir. 2016).[5]   Indeed, in *Nash v. Auburn Univ.*, 812 F.2d 655 (11th Cir. 1987), to which Plaintiff cited (Opp. at 11), the court held that due process was satisfied through a similar procedure by which the student could pose questions by directing question through the presiding chancellor.  *Nash*, 812 F.2d at 664.  Similarly, in *Furey v. Temple Univ.*, 884 F. Supp.2d 223 (E.D. Pa. 2012), which Plaintiff also cited (*id.*), the court upheld a modified form of cross-examination where the student could pose questions through the panel chair.  *Furey*, 884 F. Supp. at 251.

Plaintiff also cites to state Administrative Procedures Act ("APA") zoning law cases to suggest that Maryland state courts require cross-examination in school expulsion proceedings.  *See*

---

[4] *See also Pacheo v. St. Mary's Univ.*, 2017 WL 2670758, at *17 (W.D. Tex. June 20, 2017); *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d 586, 602 (S.D. Ohio 2016); *Brown v. Plainfield Comm'ty Consol. Dist. 202*, 522 F. Supp.2d 1068, 1075 (N.D. Ill. 2007); *B.S. ex rel. Schneider v. Bd. of School of Trustees, Fort Wayne Comm'ty Schools*, 255 F. Supp. 2d 891, 899 (N.D. Ind. 2003) (all holding that there is no right to cross examination in student misconduct hearings, even if student faces expulsion).

[5] Plaintiff also misleadingly cites to *Winnick v. Manning*, 460 F.2d 545 (2d Cir. 1972), and *Flaim v. Med. College of Ohio*, 418 F.3d 629 (6th Cir. 2005), both of which ***rejected*** due process claims brought by expelled students even though they were not allowed cross-examination.  *See Winnick*, 418 F.3d at 549 (holding that the "right to cross-examine witnesses generally has not been considered an essential requirement of due process in school disciplinary proceedings"); *Flaim*, 418 F.3d (affirming denial of right to cross examination in student expulsion proceeding).

Opp. at 11-12.  By express statutory terms, however, the APA does not apply to University student disciplinary proceedings (or to the University generally).  *See* MD. CODE ANN., EDUC., § 12-104(j)(2) ("Except with respect to [employee] grievance appeals … [the APA is] not applicable to the University.").  Plaintiff contends that *Tron v. Prince George's Cty.*, 59 Md. App. 256 (1986), a case involving disability retirement benefits before a county disability review board, somehow requires cross-examination in school disciplinary proceedings.  To the contrary, Maryland courts have stated in subsequent decisions that in "the school discipline context, procedural due process required only that the student be provided with (1) notice of charges against her and (2) a chance to explain her version of the contested event" and did not require a right to cross-examine witnesses.  *Miller v. Bd. of Educ.*, 114 Md. App. 462, 470 (1997) (quoting *Goss v. Lopez*, 419 U.S. 565 (1975)).  Thus, there is no due process requirement for cross-examination in school disciplinary proceedings.

**B.   Plaintiff received oral and written notice that was more than sufficient for school disciplinary proceedings.**

Plaintiff next asserts "constitutional notice deficiencies" and a "failure to follow their own procedures regarding notice."  Opp. at 14-15.  In fact, Plaintiff received ample notice which complied with both due process and the University's own requirements.

Plaintiff alleges that the notice he received on January 29, 2015 (Comp. Ex. 2), did not comply with the requirements of Attachment A to the Policy (Comp. Ex. 10, at p. 9 (Notice of Investigation should include summary of the conduct at issue, range of potential violations under the Policy and range of potential sanctions).  *See* Opp. at 14-15.  The Notice of Sexual Misconduct Investigation *did* contain this information.  *See* Comp. Ex. 2.  Plaintiff focuses on the "Summary of Conduct" and alleges it was insufficient to put him on notice of the factual allegations he would have to defend.  Opp. at 14.  This argument is ridiculous in the context of this case.  Plaintiff cannot

6

legitimately assert that he did not know what the Notice referring to, considering that it provided the date (December 14, 2014) and location (Frederick Hall) of the alleged sexual misconduct, and especially considering the police investigation into the incident in which Doe was interviewed.

Even if the "Summary of Conduct" was insufficient and did not comply with the University's Policy, Plaintiff misstates *Jones v. Bd. of Gov.*, 704 F.2d 713 (4th Cir. 1983), for the proposition that "a University's deviation from procedures" is a violation of due process.  Opp. at 15.  In fact, *Jones* makes clear that "not every departure from a state agency's stated… procedures constitutes a denial of constitutionally guaranteed procedural process" and there must be a "***significant*** departure" from a due process guarantee that is "sufficiently unfair and ***prejudicial***…."  *Jones*, 704 F.2d at 717 (emphasis added).  The Fourth Circuit has subsequently emphasized that even "violations of state law are insufficient by themselves to implicate the interests that trigger a due process claim."  *Wofford v. Evans*, 390 F.3d 318, 325 (4th Cir. 2004).  Courts have rejected more serious due process challenges based on actual deviations from school procedures.  *See Keerikkattil v. Hrabowski*, 2013 WL 5368744, at *6 (D.Md. Sept. 23, 2013) (dismissing due process claim even though university did not comply with policy and only provided witness list immediately prior to hearing); *Tigrett v. Rector & Visitors of Univ. of Va.*, 137 F. Supp. 2d 670, 677 (W.D. Va. 2001) (rejecting due process claim where university's initial complaint did not include a particular charge even though university procedures explicitly required written notice of all charges), *aff'd* 290 F.3d 620 (4th Cir. 2002)).[6]

---

[6] Plaintiff cites to a number of cases supposedly in support of his claim of insufficient notice – but without explaining the cases' holdings or underlying facts.  *See* Opp. at 15.  In fact, none of these cases support Plaintiff.  In *Henson v. Honor Comm. of U. Va.*, 719 F.2d 69, 75 (4th Cir. 1983), the Fourth Circuit ***rejected*** a due process challenge.  The Fourth Circuit did not detail what notice was used, it did not hold the procedures created by UVA Law School were required in all disciplinary proceedings, and it emphasized that a school "is an academic institution, not a courtroom or administrative hearing room."  *Henson*, 719 F.2d at 74 (quotation omitted).  *Mallette v. Arlington Co.*, 91 F.3d 630, 640 (4th Cir. 1996), involved disability benefits in which the recipient was affirmatively mislead that she would receive benefits and this was never corrected.  In *Doe v. Rector & Visitors of George Mason Univ.*, 149 F. Supp. 3d 602, 615 (E.D. Va. 2016) the student was only notified of alleged sexual misconduct on one date (October 27, 2013),

To the extent that Plaintiff is generally alleging that he had insufficient notice of the charges against him, a review of the totality of the circumstances belies such claim.[7]  Plaintiff was first notified of Ms. Roe's allegations when he discussed them with the campus police on the date of the incident on December 14, 2014.  AC ¶11.  Next, on January 29, 2015, the University sent him the "Notice Of Sexual Misconduct Investigation."  AC ¶13; Comp. Ex. 2.  On February 13, 2015, Mr. Bronson met with Plaintiff to discuss the alleged sexual misconduct in Frederick Hall on December 14, 2014.  AC ¶ 14.  On April 24, 2015, they met again to read and discuss the draft investigation report.  AC ¶ 17.  On May 5, 2015, Plaintiff received a notice that an Outcome Conference was scheduled for May 6, 2015.  AC ¶20; Comp. Ex. 5.  On May 7, 2015, Plaintiff received a "Charging Letter" (Comp. Ex. 8) which informed him of the charges against him and the hearing date for the SRC, scheduled for May 13, 2015, notified him of resources available to him, attached a copy of the Final Investigative Report, and provided a cite to the applicable sexual misconduct policy.  AC ¶22; Comp. Ex. 8.  Therefore, before the SRC hearing on May 13, Plaintiff knew all of the factual allegations in detail (and had known them since April 24 when he reviewed the investigation report); Plaintiff was notified he was charged with violating the Policy; he was provided a link to that policy to review it; and he was warned he faced expulsion.

Plaintiff's argument that he had insufficient notice of the charges is also belied by the fact that he came well-prepared to the SRC hearing.  Plaintiff obtained three affidavits which he submitted to the SRC (MTD Ex. 1, SRC Tr. at 21-22), and he was prepared to pose several questions to Mr. Bronson (*id.* at 22-26), including about alcohol use by Roe and alleged

---

yet was expelled for misconduct on other dates.  By contrast, here, Plaintiff was only charged and expelled for sexual misconduct on a single date (Dec. 14, 2015) for which he received abundant notice.

[7] *See Tellefsen v. Univ. of No. Carolina at Greensboro*, 877 F.2d 60, 1989 WL 64301 at *2 (4th Cir. 1989) and *Duck v. Isle of Wight Cty. School Bd.*, 362 F. Supp. 2d 675, 683 (E.D. Va. 2005) (considering due process notice claims under the "totality of the circumstances").

discrepancies between the police report and the Final Investigative Report and Roe's statements

to the police and to Mr. Bronson.  *Id.*  He was also prepared to give a statement and provide lengthy

answer to questions posed by the SRC, including pointing out what he believed were

inconsistencies in the statements and evidence of consent by Roe.  *Id.* at 27-48.

Thus, under the totality of the circumstances, Plaintiff received abundant notice of the

charges against him and had ample time to prepare to present his side of the story.

> **C.**  **Plaintiff's conclusory and unsupported assertions of bias do *not* overcome the presumption Mr. Bronson was unbiased or plausibly show actual bias.**

Plaintiff baldly asserts that he was denied a fair hearing because Mr. Bronson was biased.

Opp. at 15-17.  Plaintiff does not come close to overcoming the presumption that Mr. Bronson--

and especially the SRC--were unbiased.   The Fourth Circuit has held that government

administrators are "entitled to a presumption of honesty and integrity."  *Prof'l Massage Training*

*Center, Inc. v. Accreditation Alliance of Career Schools & Colleges*, 781 F.3d 161, 178 (4th Cir.

2015) (quotations and brackets omitted).  There is "a presumption that governmental officials can

and will decide particular controversies conscientiously and fairly" even if they were involved in

the investigation.  *Harrell v. City of Gastonia*, 392 Fed. Appx. 197, 204 (4th Cir. 2010). As Judge

Chasanow has explained in the context of a university disciplinary proceeding, university officials

are "entitled to a ***presumption of honesty and impartiality absent a showing of actual bias***."  *Osei*,

202 F. Supp. 3d at 485 (quoting *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d 586 (S.D. Ohio Mar.

23, 2016)) (emphasis added).  Plaintiff must allege facts sufficient to overcome this presumption,

and the alleged bias may not be "not based on inference and speculation."  *Osei*, 2016 WL

4269100, at *8.  Plaintiff has failed to do so.

First, Mr. Bronson did not decide the outcome of this case – the SRC did.  Second, Mr.

Bronson's Final Investigation Report is on its face neutral and he does not state or suggest any

conclusion or credibility assessments.   To the contrary, it merely provides a summary of the information he discovered and statements he received.   *See* Comp. Ex. 8, Final Investigation Report.

In support of his allegations, Plaintiff relies primarily on the question of whether Mr. Bronson contacted the roommate witnesses.[8]   This Court need not resolve that factual dispute, however, as Plaintiff presented the information from the witnesses to the SRC via their affidavits.

Plaintiff also vaguely asserts Mr. Bronson was "prosecutorial in nature."   AC ¶ 15.   The police report recounted multiple witnesses who said Plaintiff had "brought up a dare for himself" and wanted to "play a joke" by intentionally misleading Jane Doe about his identity in bed.   Comp. Ex. 1.   The fact that Mr. Bronson questioned Doe about these statements hardly shows "bias." Moreover, regardless of the tone of the interview, Mr. Bronson included both Doe's and Roe's accounts in the final report, laid out where they conflicted, and provided the full police report for the SRC.   Comp. Ex. 8, Final Report; MTD Ex. 1, SRC Tr. at 22.

Courts have rejected similar claims of "bias" alleged with more detail than anything asserted by Plaintiff.   In *John Doe v. W. New England Univ.*, 2017 WL 113059 (D. Mass. Jan. 11, 2017), the plaintiff was found by a university panel to have engaged in sexual misconduct with a female student who had been drinking.   *See W. New England Univ.*, at *2.   Plaintiff argued that the university hearing officers demonstrated "'blatant hostility' toward him by failing to challenge [the female student's] lies [and] inconsistent statements."   *Id.* at *24.   The court rejected the notion that the "decision to credit [the female student's] testimony can sufficiently demonstrate bias" and concluded that it "is not the business of lawyers and judges to tell universities what statements

---

[8] Mr. Bronson sent each of the witnesses emails, but they did not respond, as he reported to the SRC.   *See* MTD Ex. 2; Comp. Ex. 8, Final Investigation Report.

they may consider and what statements they must reject." *Id.* (quotations omitted).  *See also Carney v. Univ. of Akron*, 2016 WL 4036726, at *11 (N.D. Ohio July 28, 2016) (where student was allowed to testify, the allegation that school "did not permit presentation of all of the evidence plaintiff wished to offer … cannot rise to the level of an impermissible bias").

Finally, notwithstanding Plaintiff's assertions about Mr. Bronson, there is absolutely no allegation of bias against the SRC.  The SRC did not simply adopt Mr. Bronson's evidence, but actively questioned Mr. Bronson and Plaintiff at the SRC hearing.  *See generally* MTD Ex. 1, SRC Tr.  In *Hess v. Bd. of Trustees of So. Ill.,* 839 F.3d 668 (7th Cir. 2016), the Seventh Circuit held that even if the college investigator displayed bias, the student had the evidence and decision to expel reviewed by an administrative panel, and there was "no contention that any of the latter individuals was biased against [the student]."  *Hess*, 839 F.3d at 677.  The Seventh Circuit explained that since the student's due process claim rests on the investigator's bias, it "suffers from a fatal flaw" in the form of the neutral administrative panel.  *Id.* at 677 (emphasis added).[9] Similarly, here, the SRC's role in determining the final outcome is fatal to Plaintiff's claim of bias by Mr. Bronson.

### D.    Dr. Goodwin's Mistake in Providing the Outdated Policy Does *Not* Rise to a Due Process Violation.

Plaintiff alleges that his due process rights were violated because he was only given one day's notice before the Outcome Conference and because Dr. Goodwin mistakenly attached outdated procedures to her May 5, 2015, letter.  Opp. at 17-19.  Neither the timing of the Outcome Conference (which was made irrelevant because the case went to the SRC anyway) nor this single

---

[9] *See also W. New England Univ.*, 2017 WL 113059, at *23 (dismissing claim of bias where neither of the allegedly biased employees "was a member of the [Conduct Review Board]"); *Bleiler v. College of Holy Cross*, 2013 WL 4714340, at *12 (D. Mass. Aug. 26, 2013) (holding employee's views were irrelevant to claim of bias since employee was not a deliberating member of the hearing panel).

mistake states a due process claim or plausibly prejudiced Plaintiff.  Plaintiff tries to distinguish away the Fourth Circuit's clear admonition in *Kowalski v. Berkeley Cnty. Schools*, 652 F.3d 565 (4th Cir. 2011) that "[v]iolations of state laws or school procedures are insufficient by themselves to implicate the interests that trigger a [federal] due process claim.'" *Kowalski v. Berkeley County Schools*, 652 F.3d 565, 576 (4th Cir. 2011) (quotations omitted).  However, this principle has been applied in expulsion cases involving more substantial deviations from policy than anything here. *See Harris v. Pomerantz*, 2008 WL 3833877, at *3 (W.D. Va. Aug. 11, 2008) (holding in expulsion case that a student was "not deprived of due process" merely because university "failed to follow its own procedures"); *Herron v. Va. Commonwealth Univ.*, 366 F. Supp. 2d 355, 361 (E.D. Va. 2004) (denying due process claim regardless of alleged "failure to follow all of the prescribed procedures of the student handbook").[10]  This reflect the consensus view that "allegation that the [university] disciplinary board violated its own policies and procedures does not state a claim for a due process violation." *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d 586, 603 (S.D. Ohio 2016).

Moreover, Plaintiff cannot plausibly show any actual prejudice.  Three months earlier, on January 29, 2015, Plaintiff received his first notice of the charges (AC ¶ 13), and only **two days** after the May 5 e-mail, Plaintiff admits to receiving the official Charging Letter dated May 7, 2014, which referenced and contained a link to the correct Sexual Misconduct Policy.  AC ¶22; Comp. Exs. 8 & 9.  Although Plaintiff now contends that he did not understand the procedures, as described above he had ample notice and time to prepare for the SRC hearing.  In short, Plaintiff

---

[10] By contrast, Plaintiff cites to distinguishable cases where the deviations were far more dramatic and accompanied by significant prejudice.  *See Furey v. Temple Univ.*, 884 F.Supp.2d 223, 259 (E.D. Pa. 2012) (describing dean disregarding the review board's finding and met ex parte with witness); *Jones v. Bd. of Gov.*, 704 F.2d 713, 716 (4th Cir. 1983) (noting how student tribunal's determination was "so flawed that it was completely set aside by responsible University officials").

cannot claim prejudice, rising to the level of a constitutional violation, merely because he was provided with the wrong policy for two days.

### E.     The SRC Hearing Provided Plaintiff Abundant Opportunity to Be Heard.

Finally, Plaintiff complains that the SRC hearing did not have all the components of a full-blown criminal trial, and points to an e-mail by Ms. Goodwin saying this was "not a hearing…." (Opp. at 19) as evidence that he did not receive adequate due process.   However, it is well-established that "courts ought not to extol form over substance, and impose on educational institutions all the procedural requirements of a common law criminal trial." *Osei*, 202 F. Supp. 3d at 485; *Clark v. Whiting*, 607 F.2d 634, 643 (4th Cir. 1979) (stating while school may voluntarily offer hearing "we do not subscribe the view that such act of courtesy ripens automatically into an act of right generating all the requirements of a trial-type due process hearing....").   All that Plaintiff was entitled to was notice and "an opportunity to be heard." *Butler v. Rector & Bd. of Visitors of College of William & Mary*, 121 Fed. Appx. 515, 520 (4th Cir. 2005). Plaintiff certainly had an opportunity to be heard before the SRC.

At the SRC hearing, Plaintiff was able to tell his side of the story, present questions to be posed to Mr. Bronson, and present affidavits from the roommates. As noted above, the SRC panel questioned Plaintiff about his conduct (and why the roommates were now submitting contradictory affidavits).   MTD Ex. 1, SRC Tr. at 22-45.   The SRC's opinion makes it clear that it considered all of this information.  *See* Comp. Ex. 12, at 3-4.   Although Plaintiff would like to rehash the evidence before the SRC, it is "not the duty of the federal courts to relitigate the evidentiary issues arising out of school disciplinary proceedings." *M.B., by and through Brown v. McGee*, 2017 WL 1364214, at *19 n. 27 (E.D. Va. Mar. 24, 2017).   In short, the SRC hearing gave Doe an "opportunity to be heard" and therefore satisfied due process. *Butler*, 121 Fed. Appx. at 520.

### III. PLAINTIFF HAS FAILED TO STATE A CLAIM FOR VIOLATION OF HIS EQUAL PROTECTION RIGHTS.

Plaintiff's equal protection claims fail as a matter of law. Plaintiff's claim mirrors virtually identical allegations made by male students in similar cases nationally, and courts have routinely rejected them on similar facts. Stated succinctly, Plaintiff's failure to allege that he was treated differently from similarly situated females dooms his equal protection claims. *See Doe v. Ohio State Univ.*, __ F. Supp. 3d __, 2017 WL 951464, *25 (S.D. Ohio March 3, 2017) (dismissing equal protection claim brought by student who was disciplined for sexual misconduct where complaint did "not include an example of a female student who was accused by another student of sexual misconduct under the same facts, yet was either found not responsible or was not dismissed").[11]

Instead, Plaintiff's claim is premised on his conclusory allegation that the Policy has "an adverse impact on the Plaintiff, and men, in general." Opp. at 23. Although not clearly articulated, presumably this is based on his assumption that complainants are more often female and respondents are more often male. As explained in the Motion to Dismiss, pp. 17-18, however, courts have routinely rejected this argument; while there may be differences in how complainants and respondents are treated in sexual misconduct proceedings, those two categories of individuals are not similarly situated and that fact does not implicate gender discrimination. *See*, *e.g.*, *Doe v. Cummins*, 662 F. App'x 437, 453 (6th Cir. 2016) (male college student disciplined for sexual misconduct failed to show that alleged procedural deficiencies in the school's disciplinary process

---

[11] *See also Nofsinger v. Va. Commonwealth Univ.*, 523 F. App'x 204, 206 (4th Cir. 2013) (affirming dismissal of equal protection claim brought by student who was dismissed from graduate program where plaintiff failed to specify how other students were similarly situated and how any differential treatment was the result of discrimination); *Doe v. Rector and Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 734 (E.D. Va. 2015) (dismissing equal protection claim brought by student expelled from university for sexual misconduct where "plaintiff [drew] attention to his status as someone 'accused of sexual misconduct,' but then [presented] no allegation that the treatment he received was different in any way from the treatment and discipline given to a similarly-situated female accused of sexual assault").

were evidence of gender bias: "[T]hese deficiencies at most show a disciplinary system that is biased in favor of alleged victims and against those accused of misconduct.  But this does not equate to gender bias because sexual assault victims can be both male and female.").[12]

Tellingly, Plaintiff does not cite a single case upholding an Equal Protection violation in similar circumstances.  The two cases he does cite involving factually similar situations are totally inapposite.  *See* Opp. at 25.  First, he cites a footnote in *Doe v. Univ. of Colorado, Boulder through Bd. of Regents of Univ. of Colorado,* 2017 WL 2311209, at *15 n, 13 (D. Colo. May 26, 2017), in which the Court questions, in *dicta,* whether "preponderance of the evidence is the proper standard for disciplinary investigations such as the one that led to Plaintiff's expulsion."  This comment was not raised in the context of an Equal Protection argument – in fact, there was no Equal Protection claim in *Univ. of Colorado, Boulder* – and provides no support to Plaintiff's Equal Protection claim. He also cites *Doe v. Brandeis Univ.,* 177 F. Supp. 3d 561, 607 (D. Mass. 2016), also for its *dicta* regarding the appropriateness of the preponderance of the evidence standard of proof. *Brandeis* did not have an equal protection claim either; indeed, as a private university, the Equal Protection Clause did not even apply.  Moreover, Doe's citation to *Brandeis* is particularly ironic, because that case involved a male vs. male claim of sexual misconduct in a homosexual relationship – demonstrating that sexual misconduct policies such as the one at issue are ***not*** solely designed or implemented to favor women over men and are indeed gender neutral, vitiating the very basis of Plaintiff's Equal Protection argument.

---

[12] *See also Austin v. Univ. of Ore.*, 205 F. Supp. 3d 1214, 1226 (D. Ore. 2016); *Doe v. Univ. of St. Thomas*, 2017 WL 811905, *6 (D. Minn. Mar. 1, 2017); *Haley v. Va. Commonwealth Univ.*, 948 F. Supp. 573, 579 (E.D. Va. 1996) (all holding that even if a university treated a victim of sexual assault more favorably than the alleged perpetrator during the disciplinary process, the mere fact that the alleged perpetrator is male and the alleged victim is female does not suggest that the disparate treatment was because of the alleged perpetrator's sex).

Therefore, in the absence of a specific factual allegation that Plaintiff was treated differently than similarly situated women, his equal protection claims fail as a matter of law.

## IV.   THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

Even if this Court were to accept Plaintiff's arguments regarding violations of his equal protection and due process rights, at a minimum Defendants' and Plaintiff's briefs shows that such rights would be novel and are not "clearly established" such that it would be "clear to an objectively reasonable officer that his conduct violated that right." *Cloaninger ex. rel. Estate of Cloaninger v. McDevitt*, 555 F.3d 324, 330-31 (4th Cir. 2009) (emphasis added). Therefore, the Court should dismiss the individual defendants from monetary liability on the federal constitutional claims on the basis of qualified immunity.

## V.   PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST THE UNIVERSITY UNDER TITLE IX.

Plaintiff has failed to establish (1) "particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding" and (2) "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994).

### A.   Plaintiff has Failed to Allege Particular Facts Sufficient to Cast Doubt on the Accuracy of the Outcome of His Disciplinary Proceeding.

As explained above, the undisputed evidence easily supported the SRC's conclusion that Doe did not obtain effective consent from Roe. Comp. Ex. 12, SRC Decision at 4. The oral and written statements given by A.S. and K.P. to the police, and the text message exchange between Jane Roe and K.P., were additional, if unnecessary, evidence supporting this conclusion. *See id.*

Plaintiff argues that "[R]oe's conflicting statements that were not subject to cross-examination, regarding the amount of alcohol consumed, the time period for the encounter, and

the consensual nature of same contributed to an erroneous outcome." Opp. at 32. Plaintiff did, in fact, engage in a form of cross-examination of Mr. Bronson about alleged discrepancies in Roe's statements (MTD Ex. 1, SRC Tr., at p. 22), and the SRC had a copy of Roe's written statement to the police. *Id.* The precise amount of alcohol Roe consumed – which was also the subject of questioning by Plaintiff (*id.* at 23-26) – was finally irrelevant, given that Roe was incapacitated by sleep and by her objectively reasonably belief that the person making sexual advances was the person in whose bed she was sleeping and with whom she had gone to sleep an hour earlier.

Plaintiff also complains that "the failure of the SRC to hear live testimony [from A.S., K.P., and M.T.] that would have disputed the version of the events provided by the police, in light of the affidavits submitted at the time … contributed to the erroneous outcome." Opp. at 32. However, the SRC ***did*** consider the friends' affidavits (which flatly contradicted their previous statements, and even Plaintiff's statements, to the police) and even questioned Plaintiff about them. Comp. Ex. 12, at 3; MTD Ex. 1, SRC Tr. at 27 & 29. Moreover, the SRC's decision was based on a lack of consent, as to which there is no dispute. Comp. Ex. 4 at 4. Therefore, there is no reason to believe that anything the witnesses would have said would have changed the outcome.

Plaintiff complains that Defendants are advancing a "subjective" theory of consent. Opp. at 33. However, the opposite is true. Plaintiff's argument is that he should not be held responsible for sexual misconduct because he subjectively believed Roe knew it was he and not K.P. when, by all objective measures, a person in Roe's position would have no reason to know that Doe was not K.P. If Plaintiff's theory were accepted, a student accused of sexual misconduct could never be found responsible as long as he subjectively believed the accuser had consented. The Policy's definition of "consent," which requires that it be "knowing, voluntary and affirmatively communicated" (Compl. Ex. 9 at VI-1.60(A)-3) is specifically designed to insure actual knowing

consent by both parties, not sexual contact based on the mistaken belief by one participant that the other party has agreed.

### B.   Plaintiff has Failed to Allege Particular Circumstances Suggesting that Gender Bias was a Motivating Factor in Finding Him Responsible.

As explained above, Plaintiff has also failed to allege facts showing that he was the victim of gender bias.  Instead, he relies on conclusory allegations and statements by University officials that the University is committed to combatting sexual assaults on campus.  This is a laudable goal (and a national goal across virtually all college campuses), not evidence of gender discrimination. There is nothing in the history of the University's investigation of Roe's complaint against Doe that supports a conclusion that the University was motivated by gender bias.

For example, President Loh's statement that the University's Sexual Misconduct Policy "isn't without its shortcomings" because "[b]anning cross-examination and limiting the committee to five people who decide with a majority can make it easier to find the accused person responsible" (AC ¶ 52 & Exh. 15) is completely gender neutral and applies to *all* accused individuals, whether male or female.  Far from evincing an intent to harm male students, President Loh's statement suggests that he appreciated the need to be mindful about balancing victims' rights with the rights of the accused.  The description of "The Clothesline Project" (*id.,* ¶ 104) is gender neutral and states that sexual violence "effect[s] all genders of the University community." (*Id.,* Exh. 18.)  The "Walk in her Shoes" poster (*id.* at ¶ 48) is similar to the "public notices or newsletters informing the student body writ large about the risk of sexual assault on college campuses" that the court in *Salisbury University* rejected as evidence of gender bias.  123 F. Supp. 3d at 766-68.  Finally, the fact that Defendant Catherine Carroll, the University's Title IX coordinator, has a long of history of working to prevent sexual violence (AC, ¶ 47) is not evidence of a bias against men.  As one court noted, in rejecting a similar allegation:

[I]t is difficult to take seriously the Plaintiffs' claim of bias. After all, Dr. Allen's volunteer activity has been directed against sexual assault, which is a crime and a violation of the Code. There is not exactly a constituency in favor of sexual assault, and it is difficult to imagine a proper member of the Hearing Committee not firmly against it. It is another matter altogether to assert that, because someone is against sexual assault, she would be unable to be a fair and neutral judge as to whether a sexual assault had happened in the first place.

*Gomes v. Univ. of Me. Sys.*, 365 F. Supp. 2d 6, 31-32 (D. Me. 2005).[13]

## VI.   PLAINTIFF'S NEGLIGENCE CLAIM IS BARRED BY THE ELEVENTH AMENDMENT.

Plaintiff argues that Maryland has not waived its sovereign immunity with respect to suits in federal court based on state law tort claims. This is simply false. Rather, under the Maryland Tort Claims Act ("MTCA"), Maryland has created a limited waiver of sovereign immunity for tort claims brought in a Maryland ***state*** court. *See* Md. Code Ann., State Gov't § 12-104(a)(1) Maryland has not waived immunity for state law claims brought in the first instance in federal court. *See Dixon v. Baltimore City Police Dept.*, 345 F. Supp. 2d 512, 513 (D. Md. 2003). Moreover, the MTCA provides immunity to all State employees acting in the scope of their employment and without gross negligence or malice. *See* Md. Code Ann., Courts & Jud. Proc. § 5-522(b). Plaintiff has failed to allege facts meeting the "high threshold" required to show actual malice (*i.e.* ill will or improper motive) or gross negligence (wanton or reckless disregard for the safety of others). *See Young v. City of Mount Ranier*, 238 F.3d 567, 578 (4th Cir. 2001). Plaintiff merely alleges that Mr. Bronson should have interviewed the roommates, and Dr. Goodwin should

---

[13] *See also Doe v. Univ. of Cincinnati*, 173 F. Supp.3d at 601-02 (the fact that the hearing board chair participated in sexual assault victim advocacy programs did not demonstrate that she was biased against male students); *Sahm v. Miami Univ.*, 110 F. Supp.3d 774, 778 (S.D. Ohio 2015) (allegations that the university's Title IX coordinator served as a part-time police officer, a member of the Task Force on the Prevention of Sexual Assault, and a Title IX investigator do not suggest a bias against males so much as a bias against perpetrators of sexual assault).

not have sent the wrong procedures on May 5, 2015.  Neither act rises to these extremely high standards.  Therefore, all state law tort claims, including the state constitutional tort claims, against the individual Defendants must be dismissed.

## CONCLUSION

For the reasons stated herein and in the Motion to Dismiss, Defendants respectfully request that the Court dismiss the Complaint with prejudice or grant summary judgment in favor of Defendants.

Respectfully Submitted,

BRIAN E. FROSH
Attorney General of Maryland

/s/ Christopher B. Lord
Christopher B. Lord (Bar No. 26117)
Erik James Delfosse (Bar No. 18881)
C. Alexander Hortis (Bar No. 28522)
Catherine A. Bledsoe (Bar No. 11376)
Assistant Attorneys General
200 St. Paul Place, 17th Floor
Baltimore, Maryland 21202-2021
Phone: (410) 576-6450
Fax: (410) 576-6437
clord@oag.state.md.us
edelfosse@oag.state.md.us
ahortis@oag.state.md.us
cbledsoe@oag.state.md.us

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of June, 2017, a true and correct copy of the foregoing was served via the Court's CM/ECF system on all Counsel of Record in this matter.

Catherine A. Bledsoe
Catherine A. Bledsoe